70 F.3d 1074
 95 Cal. Daily Op. Serv. 8809, 95 Daily Journal
D.A.R. 15,420
Clarence Richard WALLIS, Plaintiff-Appellant,
v.
G.H. BALDWIN, Superintendent EOCI; Eastern Oregon
Correctional Institution; Oregon State Correctional
Facility, Medical Services; D.P. O'Dea, Assistant
Superintendent of EOCI, individually and in that capacity;
Al Bell, Program Services Manager employed by the EOCI,
individually and in that capacity, et al., Defendants-Appellees.
 No. 94-36031.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1995.
Decided Nov. 20, 1995.
 
 Appeal from the United States District Court for the District of Oregon.
 Kimberly Chaput, Pozi Wilson Atchison, Portland, Oregon, for plaintiff-appellant.
 Robert M. Atkinson, Assistant Attorney General, Salem, Oregon, for defendants-appellees.
 Before: HUG and FERGUSON, Circuit Judges and SCHWARZER,* District Judge.
 OPINION
 FERGUSON, Circuit Judge:
 
 
 1
 Following inmate Clarence Richard Wallis' assignment to a prison work detail required to clean prison attics without any protection from exposed asbestos, Wallis brought a 42 U.S.C. Sec. 1983 action for damages against defendants individually and in their official capacities as employees of the Eastern Oregon Correctional Institution ("EOCI"). Wallis now appeals the district court's grant of summary judgment in favor of defendants. We reverse and remand for trial.
 
 I.
 
 2
 The evidence favorable to the plaintiff reveals that between August 13, 1991 and August 27, 1991, inmate Wallis was assigned to a prison work detail required to clean the attics of E, F, and G wings of the EOCI main building. The attics housed pipes covered with insulation containing asbestos. The asbestos-containing insulation on the pipes had been damaged when the building had been reroofed in the spring of 1991. During the reroofing, some of the insulation material had broken loose and lay scattered around the attic with debris from the reroofing. During an inspection following the reroofing, the state fire marshal had ordered the removal of the "material" hanging from the pipes.
 
 
 3
 As part of their cleaning responsibilities, the work detail was required to tear off loose pipe covering and insulation and to bag it for disposal. Despite the fact that the attic areas lacked outside ventilation and that the work detail's activity stirred up dust and debris, Wallis was never provided with any protective gear to prevent exposure to asbestos. Wallis was given a face mask. However, the mask's packaging expressly states that it is inadequate for use with asbestos and warns that use with asbestos could cause sickness or death since the mask does not protect the wearer's lungs. Wallis and the work crew spent approximately forty-five hours cleaning the attics wearing standard-issue, khaki work uniforms and cotton work gloves.
 
 
 4
 Wallis and the work crew were supervised by David McGill, a corrections officer at EOCI. McGill stated that he been warned about the possible existence of asbestos in the attics before the cleaning detail began work there and that he had no training in asbestos handling or removal. McGill noticed asbestos in the attics on the second day of the cleaning detail and he experienced pain in his lungs during the cleaning process.
 
 
 5
 Wallis attempted to notify defendants of his concern about working with asbestos unprotected on August 17, 1991. On that date, Wallis filed a request for an interview with defendant O'Dea, the EOCI Assistant Superintendent for General Services. A few days later, on August 20, Wallis filed a grievance with defendant Baldwin, the EOCI's Superintendent, requesting that he either be removed from the work detail or provided with adequate protection against exposure to asbestos. Assistant Superintendent O'Dea responded to Wallis' request in writing a number of days after the work in the attics had been halted. O'Dea admitted that the attics contained asbestos, but contended that all of the asbestos had been safely encapsulated prior to the work detail's cleaning efforts. Although O'Dea's contention may have been true prior to the reroofing and damage caused by falling debris, it is contradicted by the report of the state fire marshal following the roof repair.
 
 
 6
 Almost one year prior to the inmates' work crew being sent into the attics, an asbestos assessment report had been completed for the EOCI. The "Prioritization of Asbestos Assessment Study" report specifically identified the existence of insulation containing asbestos around the pipes in the attics of E, F, and G wings, the attics that Wallis was required to clean. The report also identified the asbestos in the E, F, and G wing attics as posing some of the greatest risk in the institution.
 
 
 7
 In response to the work detail's complaints about the presence of asbestos, Lieutenant Jackson, a corrections officer at EOCI, suspended the cleaning detail's work. After cleaning was halted, an inspection of the attics found areas where pipe insulation was damaged and where asbestos was exposed. Subsequently, the EOCI hired Tektronics Corporation to perform asbestos abatement. Tektronics reported removing 1,132.8 pounds of asbestos from the EOCI facility.
 
 II.
 
 8
 This court reviews a grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Summary judgment is inappropriate where, when viewing the evidence in the light most favorable to the nonmoving party, there exist genuine issues of material fact. Id. The party opposing summary judgment bears the burden of setting forth specific facts to demonstrate that there exist genuine issues for trial. Leer v. Murphy, 844 F.2d 628, 631 (9th Cir.1988) (citing Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986)).
 
 Analysis
 
 9
 The requirements for proving an actionable violation of the Eighth Amendment are well established. First, an inmate must demonstrate that the deprivation suffered was "objectively, 'sufficiently serious.' " Farmer v. Brennan, --- U.S. ----, ----, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991)). Then, the inmate must establish that prison officials had a "sufficiently culpable state of mind" in allowing the deprivation to take place. Id. (quoting Wilson, 501 U.S. at 302-303, 111 S.Ct. at 2326). The latter requirement has been defined as being "deliberately indifferent" to an inmate's health or safety. Id.
 
 
 10
 It is uncontroverted that asbestos poses a serious risk to human health. See, e.g., 20 U.S.C. Secs. 3601(a)(3), 4011(a)(3) (noting the Congressional finding that medical science has not established any minimum level of exposure to asbestos considered safe). Wallis' medical expert declared that forty-five hours of unprotected exposure to asbestos is medically serious. Therefore, the critical question before the district court was whether the defendants acted with "deliberate indifference" in exposing Wallis to the asbestos in the EOCI attics. Helling v. McKinney, 509 U.S. ----, ----, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)).
 
 
 11
 The Supreme Court recently defined "deliberate indifference" in Farmer, --- U.S. at ----, 114 S.Ct. at 1979 (holding that prison officials acted with "deliberate indifference" by housing a transsexual prisoner in the general prison population, thereby failing to protect him from harm at the hands of other inmates). The Court rejected an objective test for "deliberate indifference" and held that an inmate must prove that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." Id. at ----, 114 S.Ct. at 1979. Thus, Farmer, requires an inmate to show that the official knew of the risk and that the official inferred that substantial harm might result from the risk. The Supreme Court explained that a prison official need not have acted "believing that harm actually would befall an inmate; it is enough that the official acted ... despite his knowledge of a substantial risk of serious harm." Id. at ----, 114 S.Ct. at 1981.
 
 
 12
 The Court also held that the question of a prison official's knowledge is a question of fact, "subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, --- U.S. at ----, 114 S.Ct. at 1981. Wallis proffered specific evidence showing that the defendants knew of the existence of and dangers posed by asbestos in the EOCI attics. Wallis introduced a year-old asbestos assessment report which details the locations of and dangers posed by exposed asbestos at the EOCI facility and which specifically identifies the existence of asbestos-containing pipe insulation in the attics above E, F, and G wings of the EOCI main building. Wallis also introduced evidence that the state fire marshal had ordered the EOCI to remove the "material" hanging from the pipes in the attics prior to the work detail being assigned to clean the attics. Correction Officer McGill, a member of the EOCI staff, testified that he had been forewarned about the existence of asbestos in the attics, as recorded in his log book from the first day of the cleaning assignment. McGill also testified that he became personally aware of the asbestos on the second day the work crew cleaned the attics. Finally, the record shows that Wallis, himself, attempted to notify both defendants O'Dea and Baldwin of the existence of asbestos in the attics. In his request for an interview with defendant O'Dea, Wallis specifically stated:
 
 
 13
 We are being subjected to asbestos dust without the safety of protective gear[.] I've been coughing up black garbage in the evenings even with the dust masks. And have also felt na[u]seated at times. I feel it[']s due to the dust we are in and stirring up during the cleaning process.
 
 
 14
 In addition to the fact that the defendants knew about the asbestos in the attics, it was demonstrated that the defendants had knowledge that the inmates working in the attics were at risk from exposure to asbestos. Asbestos is a well-known and highly publicized carcinogen. The Oregon state legislature has established a policy on asbestos which declares that:
 
 
 15
 (1) Asbestos has been found to be a human carcinogen. There is no known safe level for human exposure to asbestos. Ailments caused by asbestos can become manifest many years after exposure.
 
 
 16
 (2) In a decayed or damaged state, asbestos can pose a health risk to employees, inmates, patients or residents of state institutions.
 
 
 17
 Or.Rev.Stat. Sec. 283.415 (1993) (emphasis added).
 
 
 18
 Defendants contend that they had no knowledge of the existence of asbestos prior to the work crew beginning work in the attics. However, it is not enough for the prison officials to claim they did not know about the asbestos in the attics. The existence of the asbestos assessment report, the fire marshal's order to clean the debris off the pipes, and the various prison officials' testimonies that they knew or suspected the existence of exposed asbestos created an obligation for the defendants to inspect the attics prior to sending work crews into them for forty-five hours--unprotected. To force Wallis and the other inmates to clean the attics in the face of so much evidence of knowledge is to act with deliberate indifference.
 
 
 19
 REVERSED and REMANDED.
 
 
 
 *
 Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation