**Frederick BEAGLE, et al., Plaintiffs,**

v.

**Arnold SCHWARZENEGGER, et al., Defendants.**

**No. 1:14–CV–430–LJO–SAB.**

United States District Court,
E.D. California.

Signed July 25, 2014.

Benjamin Laurence Pavone, Pavone & Fonner, San Diego, CA, Gregg David Zucker, Victoria Elizabeth Niewrzol, Affeld Grivakes Zucker, LLP, Los Angeles, CA, for Plaintiffs.

David Eugene Brice, Michelle L. Angus, Attorney General's Office of the State of California, Jon S. Allin, California Department of Justice, Sacramento, CA, Susan Eileen Coleman, Kristina Doan Gruenberg, Burke, Williams & Sorensen LLP, Los Angeles, CA, Benjamin Louis Stock, J. Leah Castella, Burke, Williams & Sorensen, LLP, Oakland, CA, for Defendants.

**MEMORANDUM DECISION AND ORDER ADOPTING IN PART FINDINGS AND RECOMMENDATIONS (DOC. 64)**

## I. INTRODUCTION

LAWRENCE J. O'NEILL, District Judge.

Plaintiffs[1] are former and current inmates at Pleasant Valley State Prison ("PVSP") in Coalinga, California or Avenal State Prison ("ASP") in Avenal, California,

1. Plaintiffs are Frederick Beagle, Don Belardes, Floyd Boyd, Richard Burke, Joseph Bustamonte, Charles Carter, Otha Clark, Donald Dibble, Jerome Felder, Candelario Garza, Jeremy Hollis, Scott Imuta, Infinity, George Johnson, Bruce Koklich, Grady Montgomery, Peter Romero, Josh Thomas, Aaron Tillis, Rene Villanueva, Bertrum Westbrook, and Wayne Woods (collectively, "Plaintiffs").

who contracted "Valley Fever" during their terms of incarceration. Doc. 2 ("Compl.") at ¶ 1. This case is one of four related suits brought by various Plaintiffs who contracted Valley Fever while incarcerated. *See Jackson v. State of California*, 1:13–CV–1055–LJO–SAB; *Smith v. Schwarzenegger*, 1:14–CV–60–LJO–SAB; *Abukar v. Schwarzenegger*, 1:14–CV–816–LJO–SAB. Plaintiffs bring this suit against Defendants,[2] various former and current government officials and former and current employees of PVSP, for their roles in causing Plaintiffs to contract Valley Fever. *Id.*

Plaintiffs assert two causes of action against Defendants under 42 U.S.C. § 1983 ("§ 1983") in which they allege Defendants "recklessly caused Plaintiffs to contract Valley Fever" in violation of their Eighth Amendment rights. Compl. at ¶ 1. Specifically, Plaintiffs allege Defendants (1) recklessly exposed Plaintiffs to dangerous conditions in violation of the Eighth Amendment and (2) Defendants were deliberately indifferent to Plaintiffs' serious medical needs in violation of the Eighth Amendment. Compl. at 1. Plaintiffs assert a third cause of action against Defendants for negligence. *Id.*

Defendants moved to dismiss the complaint. Docs. 25, 27. On June 24, 2014, the Magistrate Judge issued Findings and Recommendations ("F & Rs") recommending that Defendants' motion to dismiss be granted in part and denied in part. Doc. 64 ("F & R") at 1.

On July 8, 2014, Plaintiffs timely filed twelve objections to the F & Rs ("Plaintiffs' objections"). Doc. 66 at 3. On July 22, 2014, Defendants Dr. Igbinosa and Dr. Winslow timely filed a reply to Plaintiffs' objections (Doc. 70), as did Defendants Beard, Brazelton, Brown, Cate, Hartley, Hubbard, Hysen, Meyer, Rothchild, Schwarzenegger, and Yates (Doc. 71). The Court has reviewed the F & Rs, as well as the parties' arguments for and against their adoption, and finds it appropriate to discuss the facts and the F & Rs only to the extent necessary to resolve Plaintiffs' objections.

For the following reasons, the Court ADOPTS IN PART the F & Rs. Accordingly, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.[3]

## II. BACKGROUND

Valley Fever is the colloquial name for Coccidiodomycosis, " 'an infectious disease

---

2. Defendants are Arnold Schwarzenegger, Former Governor of California; Edmund G. Brown, Governor of California; Jeffrey A. Beard, Secretary, California Department of Corrections and Rehabilitation; Paul D. Brazelton Former Warden, Pleasant Valley State Prison; Matthew Cate, Former Secretary, California Department of Corrections and Rehabilitation; James D. Hartley, Warden, Avenal State Prison; Susan Hubbard, Former Director, Division of Adult Operations; Deborah Hysen, Chief Deputy Secretary, Facilities Planning, Construction & Management; Felix Igbinosa, Medical Director, Pleasant Valley State Prison; Chris Meyer, Senior Chief, Facilities Planning, Construction & Management; Tanya Rothchild, Former Chief, Classification Services Unit; Dwight Winslow,

M.D., Former Medical Director, California Department of Corrections and Rehabilitation; and James A. Yates, Former Warden, Pleasant Valley State Prison (collectively, "Defendants").

3. The Court has reviewed the entirety of the F & Rs de novo. Plaintiffs do not object to the entirety of the F & Rs. Because the Case 1:14–cv–00430–LJO–SAB Document 74 Filed 07/25/14 Page 2 of 23 Court can discern no errors in the F & Rs beyond those discussed below in response to Plaintiffs' objections, the Court only addresses the facts and arguments necessary to resolve Plaintiffs' objections. The Court ADOPTS the F & Rs unless otherwise indicated.

caused by inhalation of a fungus (Coccidioides) that lives in the soil of dry, low rainfall areas. It is spread through spores that become airborne when the dirt they reside in is disturbed by digging, construction, or strong winds. There is no direct person-to-person transmission of infection.'" *Plata v. Brown,* 2013 WL 3200587, *2 (N.D.Cal. June 24, 2013) (quoting court medical expert report).

Valley Fever "is not contagious between persons but to those who become infected it can be debilitating, disfiguring, and intensely painful." Compl. at ¶ 5. It is "a lifelong and crippling disease." *Id.* at ¶ 1. If it is "not treated quickly, accurately, and indefinitely, it can be fatal. Over (30) prisoners [at PVSP and ASP] have already died from the disease and many more live with serious medical complications from it." *Id.*

"[S]ome 60% of people who are exposed to the Coccidioides fungus do not show overt symptoms of illness." *Id.* at 43. Some individuals only develop "mild or moderate flu-like symptoms or no symptoms." *Id.* at ¶ 6. "[M]ost of the remaining 40% will show symptoms of a respiratory illness resembling the flu that may last weeks or months." *Id.* at ¶ 44. "But the disease can rapidly progress to a so-called disseminated form for some." *Id.*

"Valley Fever has the capacity to infect any person, regardless of race, health status or immunological strength. But it is currently undisputed and well-known that certain groups are much more likely than others to contract the potentially lethal disseminated form of Valley Fever." *Id.* at ¶ 84. The disseminated form is more likely to affect "certain ethnic and racial groups including African Americans, Filipinos and other Asians, Hispanics, and American Indians, as well as for anyone who may be immune-compromised or immune-suppressed, such as those taking medication for chronic arthritis." *Id.* Filipinos and African–Americans, for instance, "have been shown to have up to a 200–fold increased risk of disseminated disease and an increased mortality rate." *Id.* at ¶ 86.

Plaintiffs allege that Defendants knowingly placed inmates in prisons "where Valley Fever was already occurring in epidemic rates" and "failed to implement even rudimentary measures recommended by the correctional authority's own medical experts to protect Plaintiffs from the disease." *Id.* at ¶ 9; *see also id.* at ¶ 57 ("[T]he soil surrounding and under PVSP is densely contaminated with the Coccidioides fungus. Yet, Defendants failed to take even the most basic precautions to guard against exposure.").

Plaintiffs allege that Defendants could have taken a number of preventative measures to lower Plaintiffs' risk of contracting Valley Fever. *Id.* at ¶ 10. Specifically, Plaintiffs allege that

> Susceptible prisoners could have been diverted or transferred away from the so-called hyperendemic prisons, either by adoption of an appropriate policy or on a case-by-case basis through ministerial decisions. Or, as ... repeatedly recommended, Defendants could have implemented basic soil control measures at the prisons to reduce exposure: steps such as paving, landscaping, and soil stabilization. Further, prison authorities repeatedly recommended that prison ventilation systems be improved or that the existing ventilation systems be properly maintained to protect inmates against indoor exposure to the spores.

*Id.* Plaintiffs claim, however, that "Defendants took none of these actions." *Id.*

Plaintiffs allege that Defendants knew as early as the fall of 2004 that "Central Valley prisons are located within areas which host the dangerous cocci fungus in

the soil," that "Valley Fever has 'potential lethality' for people exposed to the [cocci] fungus," and that "construction activity may cause the [cocci fungus] to be blown into the air where it can be inhaled and pneumonia can occur." *Id.* at ¶ 60. Nonetheless, "Defendants authorized major construction [in 2005], which churn[ed] the soil and thr[ew] the spores into the air, immediately adjacent to one of the most dangerously infectious prisons." *Id.* at ¶ 11.

According to Plaintiffs, in 2005 PVSP "began to experience an epidemic of Valley Fever, including multiple deaths from the disease." *Id.* at ¶ 62. "Infection rates at PVSP . . . were as much as 1,000 times the rate seen in the local population, yet state officials continued to transfer susceptible and non-susceptible inmates alike to th[e] prison." *Id.* at ¶ 63. By 2006, there were over 1,100 cases and eight inmate deaths. *Id.* at ¶ 64.[4] "[I]ncidence rates increased at PVSP by more than 445% between 2001 and 2005, and by over 2,500% by 2006." *Id.* at ¶ 65.

By August 2006, "Defendants knew they were housing inmates in hyper-endemic locations." *Id.* at ¶ 70. Plaintiffs allege that "[e]xperts, including [California Department of Corrections and Rehabilitation ("CDCR")] staff, attributed the rapid and continued increase in Valley Fever cases at PVSP in 2005/2006 to the new construction initiated next to the prison." *Id.* at ¶ 74. "Defendants . . . multiplied the risk to inmates at PVSP when they decided to construct a new mental hospital facility . . . less than 200 yards away" from PVSP. *Id.* at ¶ 75.

The construction "churned up an inordinate amount of the . . . fungal spores into the ambient air in and around the prison." *Id.* at ¶ 77. Plaintiffs allege "Defendants recklessly exposed the inmate population and failed to take any adequate precautions to protect inmates from the spores that would inevitably migrate onto the PVSP grounds and facility as a direct result of the soil disruption caused by the construction." *Id.* at ¶ 78.

"In 2006 the California Department of Public Health, Center for Infectious Disease conducted an epidemiological study of Valley Fever in California prisons," which was published in January 2007. *Id.* at ¶ 108. The study found that the incidence rate at PVSP was "3 times that of the entire rest of Fresno County combined." The study recommended relocating the highest risk groups to non-hyper-endemic areas "and, at a minimum, to take steps at the prisons to minimize exposure, including ventilation, respiratory protection, and dust suppression and soil control." *Id.* at ¶ 110. Plaintiffs allege Defendants were aware of the study and its recommended "mitigation measures." *Id.* at ¶ 111.

In June 2007, the California Correctional Health Care Services issued recommendations that included, among other things, "proceeding with environmental mitigation in the prisons through landscaping with ground cover, [ ] placing concrete and other dust reducing materials on the grounds . . . [and] continu[ing] the diversion and relocation of inmates at high risk for [the Valley Fever]." *Id.* at ¶ 79.

Also in 2007, a Fresno County Grand Jury "undertook the task of evaluating inmate health status at PVSP and made a series of recommendations." *Id.* at ¶ 94. The Grand Jury found that " '[l]ocal prison officials are well aware of' " the incidence of Valley Fever at PVSP and "that inmates, and staff, continue to be at great

---

4. It is unclear from the Complaint whether these figures relate to PVSP only or other prisons.

risk from Valley Fever." *Id.* at ¶ 96. The Grand Jury further found that Valley Fever "rates for all groups at the prison had increased dramatically since 2004." *Id.* at ¶ 99.

In 2007, CDCR officials "stated that they were preparing measures to reduce the risk to inmates of contracting Valley Fever at PVSP." *Id.* at ¶ 115. "The planned remedial actions included extensive measures to control inmates' exposure to contaminated soils outside buildings and greatly improved ventilation systems to limit the inmates' exposure inside the buildings." *Id.* at ¶ 116. Plaintiffs allege, however, that "[n]ot a single element of this remedial plan was ever implemented until six *years* later, and only after two contested court orders forced CDCR to act." *Id.* at ¶ 117 (emphasis in original).

"From 2007 through 2010, the rate inside PVSP was 6 times higher than the rate among residents of the state mental health facility right next door." *Id.* at ¶ 81. "Of 27 state inmates who died of Valley Fever between 2006 and 2010, at least 18 of them (or 68 percent) were African–Americans, according to the report. The rate of death due to Valley Fever among African–Americans was twice that among non-black inmates." *Id.* at ¶ 73.

A California Correctional Health Care Services report "found that CDCR had done nothing between 2006 and 2010 that had any effect on cocci incidence rates at PVSP and ASP." *Id.* at ¶ 124. The report noted: "Valley Fever incidence rates at the hyper-endemic prisons were drastically elevated and that African–Americans in particular were at increased risk of contracting Valley Fever and of suffering its legal form." *Id.* at ¶ 125. Further, the report found that "PVSP in particular had extensive areas of un-stabilized soil on its grounds, posing an extreme risk of spore release, transport, and infection and noted that simply '. . . planting lawns and paving roads reduced the rate of coccidiodal infection by one-half to two-thirds.' " *Id.* at ¶ 126.

### III. *STANDARD OF DECISION*

■ The Court reviews the F & Rs de novo. Fed.R.Civ.P. 72(b)(3). A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch Ltd. v. Behrens,* 546 F.3d 580, 588 (9th Cir.2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

and plausibility for entitlement to relief.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

■ "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal,* 556 U.S. at 681, 129 S.Ct. 1937. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly,* 550 U.S. at 562, 127 S.Ct. 1955. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir.1990) (citations omitted).

## IV. *DISCUSSION*

The Court will address Plaintiffs' objections in turn. Thus, the underlying facts and the relevant portions of the F & Rs will be discussed only to the extent necessary to resolve each objection.

**A.** *Plaintiffs' Objection to Recommendation that All Claims of All Immunocompetent* [5] *Caucasians Be Dismissed.*

■ The Magistrate Judge noted that "[s]ixty percent of individuals [who contract Valley Fever] experience no symptoms and most of the remaining forty percent only have mild flu-like symptoms." F & Rs at 23. The Magistrate Judge found that African–Americans, Filipinos and other Asians, Hispanics, American Indians, and immunocompromised individuals can state an Eighth Amendment claim [6] for exposure to Valley Fever because they are "at a substantial risk of harm due to their increased risk of developing disseminating infection." *Id.*

■ The Magistrate Judge found, however, that "Plaintiffs to this action must belong to one of these groups which place them at high risk of developing disseminated [Valley Fever] to state a claim." *Id.* Accordingly, the Magistrate Judge found that, as a matter of law, immunocompetent Caucasian Plaintiffs cannot, without more, state an Eighth Amendment claim because they do not belong to "a high risk category" for disseminated Valley Fever. *Id.* at 23–24. The Magistrate Judge noted that "no court has held that exposure to Valley Fever, in and of itself, presents a substantial risk to an inmate's health" and that "merely being exposed to an area, even a hyper-endemic area, by itself does not constitute an excessive risk of harm." F & Rs at 22 (citing *Sullivan v. Kramer,* No. 1:13–CV–00275–DLB–PC, 2014 WL 1664983, at

**5.** Immunocompetent means individuals with normally functioning immune systems.

**6.** Section 1983 provides for a cause of action for the violation of an individual's constitutional or federal rights by persons acting under color of state law. *Long v. Cnty. of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir.2006). Defendants do not dispute that Plaintiffs may

bring a claim under § 1983 against some, but not all Defendants to the extent that they were acting under color of state law. Defendants do, however, dispute whether Plaintiffs' constitutional rights were violated and, even if they were, the extent to which certain Defendants could be liable. These issues are discussed in more detail below.

\*5 (E.D.Cal. Apr. 23, 2014); *Lua v. Smith,* No. 1:14–cv–00019–LJO–MJS, 2014 WL 1308605, at \*2 (E.D.Cal. Mar. 31, 2014) *Willis v. Yates,* No. 1:08–cv–00125–0WW–SMS PC, 2009 WL 3486674, at \*3 (E.D.Cal. Oct. 23, 2009)). The Magistrate Judge concluded that building a prison in a hyper-endemic area for Valley Fever does not create a substantial risk of harm. Thus, the Magistrate Judge recommended that all immunocompetent Caucasian Plaintiffs be dismissed for failure to state a claim.[7] Plaintiffs object to this finding, claiming it is the "most fundamental" error in the F & Rs. Doc. 66 at 6.

█ Under the Eighth Amendment, "prison officials are ... prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Parsons v. Ryan,* 754 F.3d 657, 677 (9th Cir. 2014); *see also Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison official violates Eighth Amendment if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm). "Deliberate indifference occurs when '[an] official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Solis v. Cnty. of Los Angeles,* 514 F.3d 946, 957 (9th Cir.2008) (emphasis added) (quoting *Farmer,* 511 U.S. at 841, 114 S.Ct. 1970). Thus, a prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference,

exposed him to [environmental conditions] that pose an unreasonable risk of serious damage to his future health." *Helling,* 509 U.S. at 35, 113 S.Ct. 2475.

The Court notes that judges in this District, including the undersigned, "have repeatedly found that confinement in a location where Valley Fever is prevalent, in and of itself, fails to satisfy the first element of an Eighth Amendment claim, i.e., that the condition poses an excessive risk of harm." *Lua v. Smith,* No. 1:14–CV–00019–LJO–MJS, 2014 WL 1308605, at \*2 (E.D.Cal. Mar. 31, 2014)[8]; *see also King v. Avenal State Prison,* No. 1:07–CV–01283, 2009 WL 546212, \*4 (E.D.Cal. Mar. 4, 2009) ("[T]o the extent that Plaintiff is attempting to pursue an Eighth Amendment claim for the mere fact that he was confined in a location where Valley Fever spores existed which caused him to contract Valley Fever, he is advised that no courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health.") These decisions have found that inmates at PVSP, ASP, and elsewhere cannot state a claim for violation of their Eighth Amendment rights absent a "factor responsible for either increasing the risk of contraction or the severity of infection." *Lua,* 2014 WL 1308605, at \*3 ("*See, e.g., Stevens v. Yates,* 2012 WL 2520464, \*3 (E.D.Cal. June 28, 2012) (nearby construction disturbed soil); *Owens v. Trimble,* 2012 WL 1910102, \*2 (E.D.Cal. May 25, 2012) (asthma); *Whitney v. Walker,* 2012 WL 893783, \*2–4 (E.D.Cal. Mar. 15, 2012) (immune system compromised by cancer); *Thurston v. Schwarzenegger,* 2008 WL 2129767, \*2 (E.D.Cal. May 21,

---

**7.** The Magistrate Judge recommended that the claims of two immunocompetent Caucasian Plaintiffs should be dismissed without leave to amend, *see* F & R at 24–25 (recommending dismissal without leave to amend Plaintiffs Hollis and Koklich's claims), but recommended that the claims of two others be dismissed without indicating whether it should be with or without leave to amend. *See id.* at 23–24 (recommending dismissal of Plaintiffs Beagle and Burke's claims).

**8.** The Magistrate Judge dismissed the petition in *Lua.*

2008) (various medical conditions, including asthma, and race)"). The undersigned so held in *Johnson v. Pleasant Valley State Prison,* No. 1:11–CV–00191–LJO–BAM PC, 2012 WL 1297380, at *1 (E.D.Cal. Apr. 16, 2012), *rev'd,* 505 Fed.App.x 631 (9th Cir.2013).[9] Decisions from this District so finding largely cited one another.

The Ninth Circuit has only touched on the issue in undeveloped, unpublished decisions that do not establish what facts an inmate must allege to state a viable Eighth Amendment claim on the ground he/she was exposed to and/or contracted Valley Fever while incarcerated. *See, e.g., Smith v. Schwarzenegger,* 393 Fed.Appx. 518 (9th Cir.2010). In *Smith,* for instance, the plaintiff brought a claim under § 1983 on the ground that his exposure to Valley Fever while incarcerated violated his Eighth Amendment rights. *Smith v. Schwarzenegger,* No. 1:07–cv–01547–SRB, 2009 WL 900654, at *2 (E.D.Cal. Mar. 31, 2009). The plaintiff alleged that, as an African–American, he was more susceptible to contracting the disease. *Id.* Notably, however, the plaintiff did not allege that he did, in fact, contract Valley Fever. *Id.* The district court dismissed the plaintiff's complaint on the ground it failed to allege facts showing that the defendants "were aware of a particular threat to Plaintiff's health or that Plaintiff has been harmed as the result of Defendants' actions or failure to act." *Id.* Rather, the plaintiff alleged only that the defendants were aware of the presence of Valley Fever and that the plaintiff could contract it, which the district court found to be insufficient. *Id.*

The Ninth Circuit reversed, holding that the district court erred in dismissing the plaintiff's complaint with prejudice "because it is not beyond doubt that [the plaintiff] could prove no set of facts in support of his claims that would entitle him to relief." *Smith,* 393 Fed.Appx. at 518. *Id.* (citing and quoting *Helling,* 509 U.S. at 35, 113 S.Ct. 2475 (a prisoner "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health")).

Similarly, the Ninth Circuit reversed this Court's decision in *Johnson v. Pleasant Valley State Prison,* 505 Fed.Appx. 631 (9th Cir.2013). In *Johnson,* the plaintiff alleged that his exposure to and contraction of Valley Fever while at PVSP violated his Eighth Amendment rights. *Johnson,* 2012 WL 1297380, at *1. The Magistrate Judge issued Findings and Recommendations, *id.* at Doc. 13, to which the plaintiff filed objections. *Id.* at Doc. 14. Citing *Farmer,* 511 U.S. 825, 114 S.Ct. 1970 and *Helling,* 509 U.S. 25, 113 S.Ct. 2475, the plaintiff argued that the defendants exhibited deliberate indifference to the plaintiff by placing him an excessive risk of contracting Valley Fever during his term at PVSP. *Id.* at 2–3.

This Court adopted the Magistrate Judge's Findings and Recommendations in full. *See* No. 1:11–CV–191–LJO–BAM PC, *Johnson v. Pleasant Valley State Prison,* Doc. 15. This Court found, among other things, that "[e]ven if the risk of contracting Valley Fever is higher at PVSP than in other areas of the state, the Court declines to find that, due to its location, the prison itself constitutes a substantial risk of harm to inmates." *Johnson,* 2012 WL 1297380, at *3. This Court further found that "[t]here is no support for such a sweeping proposition," and therefore this Court held that "Plaintiff's Eighth Amendment claim arising from the mere fact that he is being

---

**9.** The details of *Johnson* are discussed below.

housed at PVSP is not cognizable under section 1983." *Id.*

The Ninth Circuit reversed, holding dismissal of [the plaintiff's] action was improper at this early stage because [the plaintiff] alleged that prison officials were aware that inmates' exposure to valley fever posed a significant threat to inmate safety yet failed to take reasonable measures to avoid that threat ... *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (a prison official violates the Eighth Amendment prohibition against inhumane conditions of confinement if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm).

*Johnson,* 505 Fed.Appx. at 632. The court, however, "express[ed] no opinion as to the sufficiency or merit of [the plaintiff's] allegations." *Id.*

On the one hand, the Court is aware of the substantial body of caselaw from this District holding that, as a matter of law, an inmate's exposure to and contraction of Valley Fever, in and of itself, is insufficient to state an Eighth Amendment claim. Judges of this District continue to so hold. *See, e.g., Chaney v. Beard,* No. 1:14–CV–369–MJS, 2014 WL 2957469, at *3 (E.D.Cal. June 30, 2014) ("One cannot state an Eighth Amendment claim based solely upon exposure to, or contraction of, Valley Fever.").

The Ninth Circuit's decisions in *Johnson* and *Smith,* although brief, call into question the continuing validity of such a holding. In fact, the Ninth Circuit's decision

in *Smith* suggests otherwise. As the Ninth Circuit indicated in *Smith,* the plaintiff, who allegedly was exposed to Valley Fever, *but did not contract the disease,* may have had a viable Eighth Amendment claim. 393 Fed.Appx. at 519 ("the district court erred because it is not beyond doubt that Smith could prove no set of facts in support of his claims that would entitled him to relief").[10]

The Ninth Circuit's decisions in *Smith* and *Johnson* relied, in part, on *Helling* and *Farmer,* respectively, which emphasize that an inmate's *exposure* to a health risk, in and of itself, may violate the Eighth Amendment. In *Helling,* the plaintiff-inmate alleged that the defendants violated his Eighth Amendment rights by assigning him to a cell with another inmate who smoked five packs of cigarettes a day. 509 U.S. at 28, 113 S.Ct. 2475. The plaintiff alleged that the defendants were deliberately indifferent to the health risks created by his cellmate's smoking, in violation of the Eighth Amendment. *Id.* The Supreme Court rejected the defendants' argument that the Eighth Amendment "does not protect against prison conditions that merely threaten to cause health problems in the future, no matter how grave and imminent the threat." *Id.* at 33, 113 S.Ct. 2475. The Court explained:

> We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or

---

**10.** The Court notes that the plaintiff in *Smith* was African–American. *See Smith,* 2009 WL 900654, at *2. As discussed above, many courts have found African–Americans may state an Eighth Amendment claim for exposure to Valley Fever due to being more susceptible to contracting the disease and con-

tracting a more severe form of the disease. However, the Ninth Circuit made no mention of the plaintiff's ethnicity or whether it had any bearing on its conclusion that he may have had a viable Eighth Amendment claim. *See Smith,* 393 Fed.Appx. at 519.

year. In *Hutto v. Finney*, 437 U.S. 678; 682, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), we noted that inmates in punitive isolation were crowded into cells and that some of them had infectious maladies such as hepatitis and venereal disease. This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.

*Id.* at 33, 113 S.Ct. 2475. The Court therefore held that an inmate "states a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, *exposed* him to levels of [environmental tobacco smoke ("ETS")] that pose an unreasonable risk of serious damage to his future health." *Id.* at 35, 113 S.Ct. 2475 (emphasis added).

The Court explained, however, that determining whether [the plaintiff's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id.* at 36, 113 S.Ct. 2475 (emphasis in original).

At least one visiting judge in a case from this District has relied on this holding from *Helling* to find that inmates have no Eighth Amendment claim for exposure to Valley Fever. *See Moreno v. Yates*, No. 1:07–CV–1404–DGC, 2010 WL 1223131, at *2 (E.D.Cal. Mar. 24, 2010). The court noted that, under *Helling*, the plaintiff "has the burden of showing that the 'risk of which he complains is not one that today's society choose to tolerate.'" *Id.* (quoting *Helling*, 509 U.S. at 36, 113 S.Ct. 2475). The court found that the plaintiff failed to meet this burden because, "[b]y placing a prison and other extensive facilities in the PVSP location, attended by prison employees, officials, and support personnel, as well as inmates, society plainly tolerates the health risks of that location." *Id.* (quoting *Helling*, 509 U.S. at 36, 113 S.Ct. 2475).

In *Farmer*, the plaintiff-inmate argued that the defendants had violated his Eighth Amendment rights by failing to provide adequate protection against assaults within the prison. 511 U.S. at 825, 114 S.Ct. 1970. The plaintiff alleged that the defendants "had acted with 'deliberate indifference' to [his] safety in violation of the Eighth Amendment because they knew that the penitentiary had a violent environment and a history of inmate assaults and that [he] would be particularly vulnerable to sexual attack." *Id.* The Court held, among other things, that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to

take reasonable measures to abate it." *Id.* at 848, 114 S.Ct. 1970.

The Ninth Circuit recently discussed *Helling, Farmer,* and other related cases applying their holdings in *Parsons,* 754 F.3d at 677. The court explained:

Since *Helling* and *Farmer,* we have repeatedly recognized that prison officials are constitutionally prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm. *See, e.g., Graves v. Arpaio,* 623 F.3d 1043, 1049 (9th Cir.2010) (substantial risk of harm from exposure of pre-trial detainees on psychotropic medication to extreme heat); *Wallis v. Baldwin,* 70 F.3d 1074, 1076 (9th Cir.1995) (substantial risk of harm from sustained exposure to asbestos). In fact, we have recently reminded a district court of the difference between a claim that an inmate has already suffered harm and a claim that he has been exposed to a substantial risk of serious harm. *See Thomas v. Ponder,* 611 F.3d 1144, 1151 n. 5 (9th Cir. 2010) ("In its order, the district court erroneously considers whether the prison officials were aware that Thomas was 'suffering serious harm from the deprivation' of exercise. The correct issue for consideration is, however, whether the prison officials were subjectively aware of a 'serious *risk* of substantial harm.'" (citing *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970; *Helling,* 509 U.S. at 32, 113 S.Ct. 2475)).

*Id.* at 677 (emphasis in original). Thus, under *Helling, Farmer,* and subsequent Ninth Circuit cases, the mere exposure to a health risk, in and of itself, may violate the Eighth Amendment. *Id.*

Thus, to the extent the F & Rs found that Plaintiffs cannot, as a matter of law, at this, the pleading stage, state a claim for exposure to and/or contraction of Val-

ley Fever unless they belong to a group that has a higher risk of contracting the disease or belong to a group that is more susceptible to developing a more severe form of the disease, the Court disagrees. The case law from the Ninth Circuit and the Supreme Court support Plaintiffs' contention that an inmate's mere exposure to a dangerous condition may provide grounds for an Eighth Amendment claim.

Plaintiffs do not simply allege that their Eighth Amendment rights were violated due to contracting Valley Fever while incarcerated. Plaintiffs allege that the location of PVSP and ASP *combined with* Defendants' conduct placed them at an unnecessarily and avoidably high risk of contracting the disease. *See* Compl. at ¶¶ 9–10. Plaintiffs allege that PVSP and ASP are in hyper-endemic regions where the likelihood of contracting Valley Fever is *dramatically* higher than other parts of the state. *See id.* at ¶ 71 ("In comparison with the overall rate in California (7/100,-000), the rate at PVSP was 1,001 times higher (7011/100,000), the rate at ASP was 189 times higher (1326/100,000).")*; see also id.* at ¶ 109 (incidence rate of Valley Fever three times higher than the rest of Fresno County). Further, Plaintiffs allege that Defendants knew of numerous remedial and preventative measures that Defendants could have employed that, if implemented, could have lowered Plaintiffs' risk of contracting the disease. *See, e.g., id.* at ¶ 386 ("... remedial measures such as ground cover, ventilation management, protective devices, administrative procedures, and management of inmate exposure to the environmental risks—none of which Defendants ever seriously attempted").

Plaintiffs allege that *anyone* can contract Valley Fever with severe consequences. *See* Compl. at ¶¶ 47, 84, 96. That certain individuals may be more sus-

ceptible to contracting Valley Fever and may be more likely to develop a more severe form of the disease does not necessarily mean that other, less susceptible groups were not placed at a "substantial risk of serious harm." Plaintiffs make clear in their Complaint that, although immunocompetent Caucasians are at less risk than other groups of people, they are nonetheless at risk of contracting Valley Fever, which can lead to death. As another court has observed, "it would be impossible to conclude that a disease [like Valley Fever] that, in its severe form, could lead to death does not present a risk of serious harm." *Plata v. Brown*, No. C01–1351 TEH, 2013 WL 3200587, at *10 (N.D.Cal. June 24, 2013).

■ The Court finds that Plaintiffs have alleged sufficient facts to state a claim under the Eighth Amendment against Defendants for exposing them to a dangerous condition with deliberate indifference. *Helling*, 509 U.S. at 35, 113 S.Ct. 2475. Plaintiffs need not demonstrate that they are at a higher risk of contracting Valley Fever or a more severe form of the disease to state an Eighth Amendment claim. Whether some groups are more susceptible to the disease than others in some way is not dispositive at the pleading stage for Eighth Amendment purposes. Although one group may be at more risk than another, they both may be at a constitutionally unacceptable level of risk. Plaintiffs here are all at risk of contracting Valley Fever. The Court finds that Plaintiffs need not, as a matter of law, identify a factor responsible for either increasing the risk of contraction or the severity of infection to state an Eighth Amendment claim. This holding, however, should not be read to indicate that a Rule 56 motion will not decide this case.

**B.** *Plaintiffs' Objection to the Finding that Plaintiffs' Claims of Increased Risk Due to Construction Were Misjoined.*

The Magistrate Judge found that "[t]o the extent that Plaintiff Koklich contends that construction around PVSP placed him at a higher risk of contracting Valley Fever, the Court finds that this claim is improperly joined [under Fed.R.Civ.P. 20(a) ] in this action." F & Rs at 24. The Magistrate Judge found that Plaintiff Koklich's claim "is not common to the allegations of the other plaintiffs in this action" because it "is not based upon the policy of housing high risk inmates. in the hyperendemic area." *Id.* The Magistrate Judge therefore concluded that Plaintiff Koklich's claim "does not arise out of the same transaction, occurrence or series of transactions" because it is "based upon discrete decisions by officials to build around PVSP and these facts do not rise in the claims brought by the other plaintiffs in this action." *Id.* The Magistrate Judge recommended that Plaintiff Koklich be dismissed without leave to amend.

Plaintiffs object to this finding. Doc. 66 at 13–14. In their objections to the F & Rs, Plaintiffs argue that Plaintiff Koklich's claim of increased risk due to construction at PVSP between 2005 and 2006 is "common to most of the Plaintiffs—in fact, eighteen of the twenty-two [P]laintiffs ... share this claim." *Id.* at 14. Plaintiffs also argue that the "effects of that construction on the risk of infection ... continue to the present day." *Id.* at 13.

As pled in their complaint, however, the extent to which Plaintiffs allege construction at PVSP injured them is unclear. Though Plaintiff Koklich mentions construction took place while he was incarcerated at PVSP, he does not allege it affected him in any way. *See* Compl. at ¶ 305 ("From September 2008 until May 2009

... PVSP was undergoing construction for an expansion project."). Further, Plaintiff Koklich notes construction occurred in 2008–2009, whereas the general allegations in the complaint only reference construction that allegedly occurred in 2005–2006. *See id.* at ¶¶ 74–77.

The earliest any Plaintiff was incarcerated at PVSP is 2007. *See* Compl. at ¶ 265 (Plaintiff Garza "was transferred to PVSP ... in 2007"). It is unclear when some of the Plaintiffs were first incarcerated at PVSP. *See, e.g.; id.* at ¶¶ 296–97 (Plaintiff Johnson "was transferred to PVSP to serve a brief sentence" and was diagnosed with Valley Fever in 2012); *id.* at ¶ 318 (Plaintiff Romero "was transferred from PVSP to North Kern State Prison ..: on September 3, 2010"). Many of the Plaintiffs were not incarcerated in PVPS until 2011 or 2012. *See, e.g., id.* at ¶ 340 (Plaintiff Villanueva "was transferred ... to PVSP in January 2011"), ¶ 308 (Plaintiff Montgomery was transferred to PVSP on January 1, 2012). In their objections to the F & Rs, Plaintiffs assert that the complaint alleges that the effects of the construction "continue to the present day." Doc. 66 at 13 (citing Compl. at ¶¶ 73–77). The complaint, however, does not so allege; it only alleges that the construction attributed to an increase in the incidence of Valley Fever at PVSP through 2010. *See* Compl. at ¶¶ 71–77.

Due to the lack of clarity in the complaint, the Court cannot determine at this time whether joinder of Plaintiff Koklich's claim is proper to the extent that it is based on construction at PVSP. As discussed above, Plaintiffs, including Plaintiff Koklick, have stated an Eighth Amendment claim in spite of their unclear allegations concerning construction at PVSP. But because the Court is dismissing in part Plaintiffs' complaint with leave to amend on other grounds, *see, e.g., infra* at 1071–72, Plaintiffs may amend their complaint with respect to their construction-related allegations if they wish to do so. If they do not, the objection would carry over and would be overruled.

### C. *Plaintiffs' Objection to the Finding that Individuals Over the Age of 55 Are Not at Increased Risk from Valley Fever.*

Plaintiffs object to the F & Rs "possibly by oversight, omit[ting] from its findings the fact that individuals over the age of 55 are also considered to face a higher risk of infection and complications." The F & Rs note that Plaintiffs allege that individuals over the age of 55 "are also at an increased risk of developing disseminated disease." F & Rs at 23, n. 3. Further, the F & Rs found that according to "staff experts ... inmates over 55 years of age had a 60% increased risk" of developing disseminated Valley Fever. *Id.* at 9. It is unclear whether the F & Rs did not, in fact, find that individuals over the age of 55 are not at increased risk from Valley Fever, but the complaint is clear that Plaintiffs allege individuals over the age of 55 are at increased risks from Valley Fever. *See* Compl. at ¶ 88. Because the Court finds that an inmate need not be in a higher risk group to state an Eighth Amendment claim, the Court need not find that individuals over the age of 55 are at an increased risk from Valley Fever at this time.

### D. *Plaintiffs' Objection to the Recommendation to Dismiss Plaintiff Beagle.*

The F & Rs recommended dismissing Plaintiff Beagle for failure to state a claim on the ground that he is not in a higher risk category. F & R at 23. Plaintiffs object, arguing that Plaintiff Beagle's skin graft constitutes an organ transplant, which placed him at increased risk of Val-

ley Fever. Doc. 66 at 15. Because the Court finds that an inmate need not be in a higher risk group to state an Eighth Amendment claim, the Court need not find that Plaintiff Beagle's skin graft placed him at an increased risk from Valley Fever at this time.

**E.** *Plaintiffs' Objection to the Recommendation to Dismiss Plaintiffs' Eighth Amendment Claim for Deliberate Indifference to a Serious Medical Need.*

Plaintiffs object to the Magistrate Judge's recommendation to dismiss Plaintiffs' second cause of action against Defendants for being deliberately indifferent to their serious medical needs in violation of the Eighth Amendment. Doc. 66 at 15; *see also* F & Rs at 29. The F & Rs found, among other things, that the fact Plaintiffs had no serious medical condition that required medical attention precluded their Eighth Amendment claim based on Defendant's alleged deliberate indifferent to their serious medical needs. Plaintiffs assert that "certain Defendants' actions, in placing and confining certain of the Plaintiffs with known medical conditions in areas where they were exposed to greatly increased risks of serious medical injury, were recklessly indifferent to those Plaintiffs' serious medical need." Doc. 66 at 15.

 The test for establishing deliberate indifference to serious medical needs has two parts:

> First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'.... Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006). The second part of the test is satisfied by "showing (a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care'.... Yet, an 'inadvertent [or negligent] failure to provide adequate medical care' alone" is insufficient. *Id.* (citations omitted).

 Plaintiffs allege that "Plaintiffs, including especially ones with pre-existing medical conditions ... faced an unacceptably high risk of serious medical consequences from their forced exposure to increased risk of Valley Fever at the hyperendemic prisons." Compl. at ¶ 384. Plaintiffs further allege that each of the Defendants "was personally aware that inmates with identified medical conditions were particularly susceptible to Valley Fever in its most dangerous form, and each of them was in a position to establish or contribute to policies or to take other actions that would have addressed Plaintiffs' serious medical needs." *Id.* at ¶ 390. Plaintiffs do not allege any facts that Defendants denied, delayed, or intentionally interfered with Plaintiffs' medical treatment, and Plaintiffs do not allege that Defendants failed to treat any medical condition. Rather, Plaintiffs allege that Defendants exhibited deliberate indifference by exposing Plaintiffs to an unnecessarily high risk of Valley Fever. *See id.* at ¶ 385 ("Exposure to this infection and its medical consequences was without penological justification"); *see also* Doc. 66 at 16. The Court therefore agrees with the Magistrate Judge's finding that "[a]s alleged in the complaint, Plaintiffs' claim is deliberate indifference to conditions of confinement." F & Rs at 30. Accordingly, Plaintiffs'

second cause of action is DISMISSED WITH LEAVE TO AMEND.

### F. *Plaintiffs' Objection to the Recommendation to Dismiss Defendant Winslow.*

The F & Rs recommended that Defendant Winslow be dismissed from this case. F & Rs at 28. The Magistrate Judge found that Plaintiffs' conclusory allegation that "Defendant Winslow personally participated in CDCR's adoption of policies that allowed high risk inmates to continue to be transferred to these prisons" was unsupported with sufficient facts. *Id.* The Magistrate Judge further found that Plaintiffs' allegation that "Defendant Winslow issued a memorandum making recommendations to reduce the infection rate inside the prison" contradicts Plaintiffs' assertion that Defendant Winslow acted with deliberate indifference. *Id.*

The Court agrees with both of these findings. Accordingly, the Court GRANTS WITH LEAVE TO AMEND Defendant Winslow's motion to dismiss.

### G. *Plaintiffs' Objection to the Recommendation to Dismiss Defendant Igbinosa.*

The F & Rs recommended that Defendant Igbinosa be dismissed from this case. F & Rs at 29. The Magistrate judge found that

> Plaintiffs' complaint fails to allege any facts from which the Court may infer that Defendant Igbinosa was responsible for the policy of housing high risk inmates at PVSP or had any authority, by virtue of his position as medical director at the prison, to have inmates transferred to another prison due to being at high risk of contracting disseminated disease.

*Id.* at 28.

The Court agrees with this finding. Plaintiffs have failed to allege any facts demonstrating that Defendant Igbinosa had any involvement or influence over prison-wide policies at PVSP. Plaintiffs only allege in conclusory fashion that Defendant Igbinosa "failed to take any actions to address the epidemic or to reduce inmate exposure to the disease" and was therefore "implicated in PVSP's failure to establish a prison-level policy of screening inmates and potential inmates for risk factors for Valley Fever." Compl. at ¶ 32. Accordingly, the Court GRANTS WITH LEAVE TO AMEND Defendant Igbinosa's motion to dismiss.

### H. *Plaintiffs' Objection to the Finding that Plaintiffs' State Tort Law Claim Is Barred.*

The F & Rs recommended that Plaintiffs' state law claim for negligence be dismissed because Plaintiffs fail to allege compliance with the California Tort Claim Act. F & Rs at 35. Specifically, the Magistrate Judge found that Plaintiffs were required to timely present their claims to the Victims Compensation Board ("the VCB") before filing this case. *Id.* Plaintiffs argue the California Tort Claim Act does not apply here. *See* Doc. 66 at 19–20.

Plaintiffs are mistaken. "To state a tort claim against a [public entity or] public employee, a plaintiff must allege compliance with the [California] Tort Claims Act." *Green v. Chakotos,* No. 1:11–CV–1611–LJO–DLB PC, 2014 WL 3563314, at *4 (E.D.Cal. July 18, 2014) (citing *State v. Superior Court (Bodde),* 32 Cal.4th 1234, 1245, 13 Cal.Rptr.3d 534, 90 P.3d 116 (2004); *Mangold v. Cal. Pub. Utils. Comm'n,* 67 F.3d 1470, 1477 (9th Cir.1995); *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 627 (9th Cir. 1988)). Because Plaintiffs have not alleged compliance with the California Tort

Claims Act, their California state law negligence claim is barred. *See Bodde*, 32 Cal.4th at 1245, 13 Cal.Rptr.3d 534, 90 P.3d 116 (presentation of a written claim, and action on or rejection of the claim, are conditions precedent to filing a tort claim against a public agency or a public employee); *see also* Cal. Gov.Code §§ 945.4 and 950.2. The Court finds no merit to Plaintiffs' claim that they are excused from complying with the California Tort Claims Act for the reasons stated in the F & Rs. F & Rs at 33–35; *see also* Doc. 66 at 19–20. Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' third cause of action for negligence.[11]

### I. Plaintiffs' Objection to the Finding that Plaintiff Boyd's State Law Claim is Barred.

Plaintiffs object to the F & Rs finding that Plaintiff Boyd's state law negligence claim is barred. Doc. 66 at 21; F & Rs at 35. Plaintiff Boyd timely filed a claim to the VCB on January 24, 2014, which was rejected on March 20, 2014, approximately one month after Plaintiffs filed this case. F & Rs at 36. Plaintiff Boyd was barred from filing a state law negligence claim prior to the VCB acting on or rejecting his claim. *Bodde*, 32 Cal.4th at 1245, 13 Cal. Rptr.3d 534, 90 P.3d 116. Accordingly, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss Plaintiff Boyd's negligence claim.

### J. Plaintiffs' Objection to the Recommendation that Defendant Schwarzenegger Be Dismissed.

The F & Rs acknowledged that Defendant Schwarzenegger "was or should have been aware of the threat to high risk inmates," but recommended that he be dismissed on the ground that he "is not liable for the policies of CDCR where he did not participate in or direct the violations, nor knew of the violations and failed to act to prevent them." F & Rs at 26. The F & Rs found that Plaintiffs "fail[ed] to show that [Defendant Schwarzenegger] had any personal involvement in the policies that allowed such high risk inmates to be housed at PVSP or ASP." *Id.* The F & Rs further found that "[t]o the extent that Plaintiffs attempt to state a claim based solely upon the decision to house inmates in the endemic area, the … complaint fails to state a claim … [because] building a prison in the hyper-endemic area does not create a substantial risk of harm." *Id.* The F & Rs also found that Plaintiffs failed to allege facts showing that "Defendant Schwarzenegger was aware of any substantial risk of harm to inmates due to the decision to build next to PVSP … [and] such claims are not properly joined in this action." *Id.* at 27.

To the extent the F & Rs found that Plaintiffs' claims against Defendant Schwarzenegger for condoning and/or authorizing the construction at PVSP were misjoined, the extent to which Plaintiffs allege the construction at PVSP injured them is unclear, as mentioned above. Accordingly, to the extent Plaintiffs' allege that Defendant Schwarzenegger violated their Eighth Amendment rights due to his involvement with the construction at PVSP, Plaintiffs fail to state a claim.

 Likewise, Plaintiffs' conclusory allegations that Defendant Schwarzenegger "had the authority to establish the state's executive-branch policies and practices including those at CDCR" but that he

---

11. All Plaintiffs except Plaintiff Boyd failed to file any claim with the VCB. But as discussed below, Plaintiff Boyd also failed to comply with the California Tort Claims Act. Thus, the Court dismisses Plaintiffs' third cause of action as to all Plaintiffs.

"knowingly condoned subordinates' actions that greatly increased Plaintiffs' exposure" to Valley Fever are insufficient to state a claim. Plaintiffs do not provide sufficient facts explaining which CDCR policies or subordinates' actions Defendant Schwarzenegger "knowingly condoned" that led to Plaintiffs' alleged constitutional violations. Simply put, Plaintiffs do not allege specific facts explaining how Defendant Schwarzenegger's action or inaction led to the allegedly unconstitutional policies at issue here. *See Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir.2011). As currently pled, Defendant Schwarzenegger's involvement (or lack thereof) is too attenuated and unclear to support such a finding. Accordingly, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss Defendant Schwarzenegger.

## V. *CONCLUSION AND ORDER*

For the foregoing reasons, the Court ORDERS that

1. Plaintiffs' second cause of action is DISMISSED WITH LEAVE TO AMEND.
2. Plaintiffs' third cause of action is DISMISSED WITHOUT LEAVE TO AMEND.
3. Defendants Winslow, Igbinosa, and Schwarzenegger's motions to dismiss are GRANTED WITH LEAVE TO AMEND.
4. The Court adopts in part the Findings and Recommendations filed on June 24, 2014 (Doc. 64).

This is the last time amendment will be allowed. The Court neither has the time nor the responsibility to author amended complaints. Legal direction has been supplied herein—*once.*

**SO ORDERED.**