**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRED GRAVES and ISAAC V.
POPOCA,
              *Plaintiffs-Appellees,*

              v.

JOSEPH M. ARPAIO, Sheriff of
Maricopa County,
              *Defendant-Appellant,*

              and

FULTON BROCK; DON STAPLEY;
ANDREW KUNASEK; MAX W.
WILSON; MARY ROSE WILCOX,
              *Defendants.*

No. 08-17601

D.C. No.
2:77-cv-00479-
NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
March 8, 2010—San Francisco, California

Filed October 13, 2010

Before: Betty B. Fletcher, Richard R. Clifton, and
Carlos T. Bea, Circuit Judges.

Per Curiam Opinion

17051

**COUNSEL**

Michele M. Iafrate and Courtney Rachel Cloman, IAFRATE & ASSOCIATES, Phoenix, Arizona, for the defendant-appellant.

Larry A. Hammond, Sharad H. Desai, and Debra A. Hill, Osborn Maledon, P.A., Phoenix, Arizona; Dan Pochoda, ACLU of Arizona, Phoenix, Arizona; and Margaret Winter, ACLU – AMERICAN CIVIL LIBERTIES UNION, Washington, D.C., for the plaintiff-appellee.

---

**OPINION**

PER CURIAM:

Defendant Joseph M. Arpaio, the Sheriff of Maricopa County, appeals the district court's Second Amended Judgment. The judgment requires him to take affirmative measures to address conditions in Maricopa County jails that violate the Eighth and Fourteenth Amendments. Sheriff Arpaio challenges two provisions of the Second Amended Judgment: its requirement that he provide pretrial detainees taking psychotropic medications with housing in which the temperature does not exceed 85° F, and its requirement that he provide detainees with food that satisfies the United States Department of Agriculture's *Dietary Guidelines for Americans* ("*Dietary Guidelines*"). He argues that these provisions are procedurally flawed because the district court ordered prospective relief without giving him an opportunity to propose alternative remedies, and substantively flawed because the relief ordered by the district court is not the least intrusive means for correcting a current and ongoing violation of the rights of pre-trial detainees. For the reasons that follow, we disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1977, three indigent prisoners brought suit against the Maricopa County Sheriff and Board of Supervisors on behalf of all pretrial detainees held in Maricopa County jails. The detainees claimed that the harsh conditions of confinement at the jails violated their constitutional rights. They challenged, *inter alia*, prison overcrowding, inadequate recreational time, dangerously high temperatures, limited access to reading material, and inadequate food. The parties negotiated a comprehensive agreement that addressed each of the detainees' claims, and the district court entered a judgment adopting the terms of that agreement in 1981. The judgment was amended in 1995 to reflect changes in the prison population, new jail construction, advances in medical treatment, and evolution of the law.

The following year, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. 104-134, § 801-810, 110 Stat. 1321 (1996) (codified as amended in scattered sections of 18, 28, and 42 U.S.C.). In 1998, the defendants filed a Motion to Terminate the Amended Judgment. The district court denied the motion, the defendants appealed, and the Ninth Circuit vacated the district court's denial and remanded this case in 2001.

Defendants submitted a Renewed Motion to Terminate the Amended Judgment. After some delay in the district court, the case was transferred to a different judge in April 2008, and that judge scheduled an evidentiary hearing for August 2008. The district court noted that this schedule, which was more rushed than either party desired, was necessary because the PLRA required the court to "promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions." 18 U.S.C. § 3626(e)(1). When the defendants asked that the hearing be postponed, the district court again emphasized the "grave urgency of this proceeding" and denied their Motion to Continue.

The parties jointly submitted a report recommending a schedule for discovery in anticipation of the August hearing. The report contemplated that the hearing would focus on whether there were ongoing and systemic violations of the rights of pretrial detainees held in Maricopa County jails. Plaintiffs briefly suggested that, if the district court found that there were ongoing violations, the court then hold a second hearing where defendants could propose a plan for addressing those violations. The district court largely adopted the parties' scheduling recommendations, but made clear that there would be only one hearing covering both liability and remedies. Combining the hearings posed no hardship to either party, the district court explained, and there was no reason for further delay.

The district court heard twelve days of evidence and argument in August and September 2008. While the hearing was ongoing, each party submitted a brief suggesting that the court hold a second hearing on remedies if plaintiffs prevailed on liability. The district court issued the Second Amended Judgment and accompanying Findings of Fact and Law in October 2008.

Sheriff Arpaio timely appeals.

## DISCUSSION

### I.  Separate Hearing on Remedies

Sheriff Arpaio contends that the district court did not give him an adequate opportunity to propose a plan for correcting the ongoing constitutional violations found by the district court. In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court held that the district court erred when, after finding ongoing constitutional violations in prisons operated by the Arizona Department of Corrections, it delegated responsibility for devising a remedial plan to a special master. *Id.* at 363. Although the Arizona Department of Corrections was given

an opportunity to object to the special master's proposed plan, "[t]he State was entitled to far more than an opportunity for rebuttal." *Id.* "[C]onsiderations of comity . . . require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." *Id.* at 362.

**[1]** While *Lewis* is clear that prison officials must be given an opportunity to propose remedies in the first instance, the Supreme Court did not specify whether that opportunity must come *after* the district court finds ongoing constitutional violations. The Court did suggest that, ideally, a district court would first determine whether there are ongoing violations, then assign the state "the task of devising a Constitutionally sound program" to correct those constitutional violations, and then finally approve the state's plan subject to any amendments necessary to address well-founded objections raised by the prisoners. *Id.* at 362 (internal quotation marks omitted). The Court recommended this procedure but did not require it.

**[2]** The district court did not err by requiring Sheriff Arpaio to propose remedies at the twelve-day hearing on the Renewed Motion to Terminate. District courts have broad discretion when it comes to trial management. *See Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) ("We review such challenges to trial court management for abuse of discretion."); *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) ("A district court's refusal to bifurcate a trial is accordingly reviewed for an abuse of discretion."). Federal-state comity requires a district court to give prison officials an opportunity to propose remedies; the Constitution does not also dictate the precise timing for that proposal or how that proposal should be submitted for consideration by the court. Such logistical issues are best left to the district court's discretion. In light of the PLRA's clear instruction that a district court "promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions," 18 U.S.C. § 3626(e)(1), and the lower court's reasonable desire to act quickly to curb ongoing

civil rights violations at Maricopa County jails, we cannot say that it was an abuse of discretion for the district court to hear evidence on both rights and remedies at one hearing.

## II.   Relief Necessary to Address Current and Ongoing Violations of Prisoners' Rights

The district court ordered Sheriff Arpaio to house pretrial detainees taking psychotropic medications in cells where the temperature does not exceed 85° F and to provide detainees with food that satisfies the *Dietary Guidelines*. Sheriff Arpaio argues that this prospective relief violates the PLRA because the temperature and food in Maricopa County jails do not violate the Eighth or Fourteenth Amendments and, even if it did, the ordered relief is not the least intrusive means to correct those violations.

[3] Under the PLRA, prospective relief regarding prison conditions is terminable upon the motion of any party. 18 U.S.C. § 3626(b)(1)(A). The 1995 Amended Judgment, like the original 1981 judgment, was "granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id*. § 3626(b)(2).[1] The PLRA provides that such a judgment must terminate immediately unless the district court makes written findings demonstrating that prospective relief "remains necessary to correct a current and ongoing violation" and satisfies the need-narrowness-intrusiveness requirements. *Id.* at § 3626(b)(3). Rather than terminate the prospective relief, the district court opted to modify the Amended Judgment and make the required written findings.

---

[1]Courts have referred to this as the " 'need-narrowness-intrusiveness' " inquiry. *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (quoting *Handberry v. Thompson*, 436 F.3d 52, 64 (2d Cir. 2006)).

**[4]** When a party moves to terminate prospective relief under § 3626(b), the burden is on the movant to demonstrate that there are no ongoing constitutional violations, that the relief ordered exceeds what is necessary to correct an ongoing constitutional violation, or both. *See Gilmore v. California*, 220 F.3d 987, 1007-1008 (9th Cir. 2000); *see also Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992) ("[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree."). In his Reply Brief, Sheriff Arpaio argues that the district court erred by placing the burden on him to demonstrate that the § 3626(b) requirements were met. The district court did not err and, in any event, arguments raised for the first time in a reply brief are waived. *See United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009).

The district court's factual findings regarding conditions at the Maricopa County jails are reviewed for clear error. *See Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Whether those facts demonstrate an Eighth or Fourteenth Amendment violation is a question of law that we review de novo. *Id.* If we agree with the district court that there are ongoing and systemic constitutional violations in Maricopa County jails, then we must decide whether the prospective relief ordered by the district court was appropriate. The standard of review is abuse of discretion. *See Hoptowit v. Ray*, 682 F.2d 1237, 1245-46 (9th Cir. 1982). The district court abuses its discretion by fashioning relief that violates the PLRA. *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1056-57 (9th Cir. 2007) ("A district court abuses its discretion when it bases its decision on an incorrect view of the law . . . ."). *See also United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc) ("[T]he first step of our abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested . . . . [T]he second step of our abuse of discretion test is to determine whether the trial court's application of the

correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." (internal quotation marks omitted)).

### a. Prospective Relief to Address Dangerously High Temperatures

#### i. Factual Findings

The district court found that air temperatures above 85° F greatly increase the risk of heat-related illnesses for individuals who take psychotropic medications and found further that pretrial detainees taking psychotropic medications have been held in areas where the temperature has exceeded 85° F. These two findings are not clearly erroneous.

**[5]** Plaintiffs' psychiatric expert testified that many psychotropic medications, including those most likely to be prescribed to pretrial detainees, cause patients to suffer from a significantly increased risk of heat-related illness when ambient air temperatures reach 85° F. The defendants' own expert confirmed that high temperatures can "affect someone's state when they are taking . . . psychotropic medications." On the basis of this testimony, the district court reasonably concluded that temperatures in excess of 85° F are dangerous for pretrial detainees taking psychotropic medications. Sheriff Arpaio argues that this finding is wrong because the record shows that *some* psychotropic medications affect the body's ability to regulate heat, not *all* such medications. Even if the district court's over-generalization was incorrect, that error was harmless. Fed. R. Civ. P. 61. As we explain below, a more narrow factual finding would not have caused the district court to order more narrow prospective relief.

**[6]** Furthermore, plaintiffs' expert testified that he had found many seriously mentally ill detainees in segregation cells where temperatures are known to exceed 85° F, including some detainees on anti-psychotic medications. Although

he had the burden of proof, Sheriff Arpaio did not introduce rebuttal evidence in support of his claim that pretrial detainees taking psychotropic medications are not housed in cells where the temperature is dangerously high. Considering the evidence in the record, we cannot say that the district court's findings of fact were clearly erroneous.

### ii. Legal Conclusions

**[7]** The district court concluded that the "Eighth Amendment requires that the temperature of the areas in which pretrial detainees are held or housed does not threaten their health or safety." We agree. We have held that the "Eighth Amendment guarantees adequate heating" but not necessarily a "comfortable" temperature. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996). One measure of an inadequate, as opposed to merely uncomfortable, temperature is that it poses "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The district court did not err, therefore, in concluding that dangerously high temperatures that pose a significant risk to detainee health violate the Eighth Amendment. Accepting the district court's factual finding that temperatures in excess of 85° F greatly increase the risk of heat-related illness for pretrial detainees taking psychotropic medications, it follows that the Eighth Amendment prohibits housing such pretrial detainees in areas where the temperature exceeds 85° F.

### iii. Prospective Relief

Sheriff Arpaio argues that the prospective relief ordered by the district court violates the PLRA because it is not narrowly tailored to meet the requirements of the Eighth Amendment. The district court ordered Sheriff Arpaio to house all detainees taking psychotropic medications in temperatures that do not exceed 85° F, not just those pretrial detainees taking psychotropic medications that affect the body's ability to regulate heat. The Eighth Amendment protects against dangerously

high temperatures, and temperatures in excess of 85° F are dangerous only for the latter, more narrow category of pretrial detainees.

[8] The PLRA does not require that prospective relief exactly map onto the requirements of the Eighth Amendment. Rather, the statute authorizes relief that is "necessary to correct" the ongoing constitutional violation found by the district court. 18 U.S.C. § 3626(a)(1)(A), (b)(3). The district court could have ordered Sheriff Arpaio to house pretrial detainees in areas where the temperature does not exceed 85° F *if* those detainees take psychotropic medications that affect the body's ability to regulate heat, but that relief would have been insufficient to correct the ongoing Eighth Amendment violations at Maricopa County jails. The district court found that mental health screening and recording-keeping in Maricopa County jails is inadequate, and as a result Sheriff Arpaio does not know which pretrial detainees are taking which medications. Sheriff Arpaio does not contest these findings. Given that Sheriff Arpaio does not know which pretrial detainees are taking medications that affect the body's ability to regulate heat, limiting relief to that category of pretrial detainees would have been impracticable and thus inadequate to correct the Eighth Amendment violation found by the district court. It was not an abuse of discretion for the district court to order prospective relief that covered all pretrial detainees who take psychotropic medications.[2]

b.   *Prospective Relief to Address Inadequate Food*

[9] The district court concluded that the Eighth Amendment requires that "prisoners receive food that is adequate to

---

[2]Of course, if record-keeping were to be improved so as to allow Sheriff Arpaio to determine which detainees take phychotropic medicine that does not interfere with the ability to regulate body heat, Sheriff Arpaio might wish to seek modification of the district court's order. But that situation was not before the district court, nor now before us.

maintain health." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir 1993). The Amended Judgment required that detainees be provided food that meets or exceeds the Department of Agriculture's *Dietary Guidelines*. The *Dietary Guidelines* recommend 2400 calories daily for males aged 19-30 with a sedentary activity level, and 2600-2800 calories daily for males aged 19-30 with a moderately active lifestyle. The district court found that, if Sheriff Arpaio afforded pretrial detainees the amount of recreation time they were entitled to under the Eighth and Fourteenth Amendments, most pretrial detainees would fall into the "moderately active" category. The Maricopa County dietician testified that he designs menus to provide each prisoner with approximately 2400 to 2500 calories a day. The district court did not credit this testimony because the menus submitted to the court were exceedingly vague, it was clear that the dietician did not actually know what prisoners were fed, and substantial testimony from pretrial detainees established that they are often given food that is overripe, moldy, and generally inedible. The district court ultimately found that pretrial detainees are not given food that satisfies the *Dietary Guidelines* and that Sheriff Arpaio had produced no evidence showing that the *Dietary Guidelines* exceed what was necessary for adequate nutrition.

Sheriff Arpaio does not contest the district court's conclusion that the Eighth Amendment requires "adequate nutrition" or the court's factual findings.[3] He argues only that the relief ordered by the Amended Judgment and now the Second Amended Judgment — that Sheriff Arpaio "provide food to pretrial detainees that meets or exceeds the United States Department of Agriculture's *Dietary Guidelines for Ameri-*

---

[3]Sheriff Arpaio contends in his Reply Brief that the district court's finding that the food served to pretrial detainees does not satisfy the *Dietary Guidelines* was clearly erroneous because plaintiffs did not introduce expert witness testimony in support of that finding. This argument was not raised in his opening brief and thus waived. *See Meyer*, 565 F.3d at 1199 n.1. Furthermore, the burden was on Sheriff Arpaio, not the plaintiffs, to prove current jail conditions. *See Gilmore*, 220 F.3d at 1007.

*cans*" — is not narrowly tailored to the requirements of the Eighth Amendment. We disagree.

As the movant, the burden was on Sheriff Arpaio to demonstrate that the relief ordered by the Amended Judgment went beyond what is necessary to remedy the ongoing constitutional violations at the Maricopa County jails. *See Gilmore*, 220 F.3d at 1008 (holding that the district court erred by not "plac[ing] the burden on the state to show that the 1972 Order exceeded the constitutional minimum"). Sheriff Arpaio does not point to any evidence in the record supporting his assertion that 2600 to 2800 calories is more than what is required for adequate nutrition. Instead, he relies on this court's decision in *Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982), which states that a court "may consider opinions of experts and pertinent organizations" when determining whether prison conditions violate the Eighth Amendment, "[b]ut these opinions will not ordinarily establish constitutional minima." *Id.* at 1246. While instructive, *Hoptowit* is not dispositive; *Hoptowit* discussed what a district court may consider when determining the minimum required by the Eighth Amendment, while we are concerned with whether the PLRA's narrow tailoring requirement is violated because the Dietary Guidelines are too far from the Eighth Amendment minimum.

**[10]** The abuse of discretion standard does not require us to measure the distance between the Eighth Amendment's adequate nutrition standard and the nutrition standards established by the United States Dietary Guidelines. It requires that we are satisfied that the two are not so far apart that adopting the Dietary Guidelines is "illogical, implausible, or without support in inferences that may be drawn from facts in the record," *Hinkson*, 585 F.3d at 1264, and therefore violative of the PLRA's narrow tailoring requirement. In light of the evidence in the record — which includes nothing from Sheriff Arpaio to suggest that the *Dietary Guidelines* exceed what is necessary for adequate nutrition — we cannot say that it was

an abuse of discretion for the district court to order Arpaio to provide food that satisfies the *Dietary Guidelines*.

## CONCLUSION

The district court gave Sheriff Arpaio an adequate opportunity to propose a plan for correcting the ongoing Eighth Amendment violations in Maricopa County jails. The prospective relief ordered by the district court did not go beyond what was necessary to correct those violations. Accordingly, the Second Amended Judgment is **AFFIRMED**.