**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WALTER D. BALLA, *Plaintiff-Appellant/ Cross-Appellee,* v. STATE OF IDAHO; IDAHO STATE BOARD OF CORRECTION; DIRECTOR OF IDAHO DEPARTMENT OF CORRECTIONS, *Defendants-Appellees/ Cross-Appellants.* | Nos. 20-35579 20-35580 D.C. No. 1:81-cv-01165-BLW OPINION |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted October 8, 2021
Seattle, Washington

Filed March 22, 2022

Before: RICHARD A. PAEZ, MILAN D. SMITH, JR.,
and JACQUELINE H. NGUYEN, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

**Prisoner Civil Rights**

The panel affirmed the district court's order granting defendants' motion to terminate prospective relief pursuant to the Prison Litigation Reform Act in a class action alleging unconstitutional prison conditions at the Idaho State Correctional Institution.

In 1981, Walter Balla, an incarcerated person at the Idaho State Correctional Institution (ISCI), brought this class action suit alleging unconstitutional prison conditions against the State of Idaho, the Idaho State Board of Correction, and the Director of the Idaho Department of Correction (defendants). In 1984, the district court granted injunctive relief related mostly to medical care and physical safety *(Balla I)*. Over the decades since then, the district court has ordered many forms of prospective relief. At issue in this appeal is the district court's order granting defendants' motion to terminate all prospective relief, pursuant to the requirements of the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(b).

The panel first rejected plaintiffs' assertion that the district court abused its discretion in excluding evidence of defendants' failure to adequately treat the Hepatitis C virus at ISCI. The panel held that the injunctive relief ordered in *Balla I*, pertaining to medical care and physical safety, was not issued in consideration of Hepatitis C. Accordingly, there was nothing to enforce with respect to Hepatitis C

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

treatment as it related to the current *Balla* injunctions. Evidence of the virus's treatment did not necessarily answer whether there was an ongoing constitutional violation related to the general provision of healthcare that was required by the district court's prior orders.

The panel next turned to the issue of the level of care in ISCI's Medical Annex. Considering the record before it, the district court did not clearly err in finding no evidence that ISCI medical staff made choices in conscious disregard of an excessive risk to the plaintiffs' health. Accepting these findings, the conditions at the Medical Annex did not rise to the level of an Eighth Amendment violation because there was no deliberate indifference.

The panel rejected plaintiffs' challenge to the termination of population caps in certain units because defendants met their burden of showing no ongoing constitutional violation. Plaintiffs presented no evidence there were ongoing problems of the sort that motivated the population caps and security staffing orders in the first place.

The panel held that it lacked jurisdiction to consider plaintiffs' challenge to orders pertaining to certain other population caps and restrictions on double celling because those orders were terminated in *Balla III* in 2005, and any appeal of that decision was untimely.

The panel rejected as foreclosed defendants' argument on cross-appeal that the burden of proof framework established by this Circuit's precedent was wrong. The panel noted that only an en banc court or the U.S. Supreme Court can overrule a prior panel decision.

## COUNSEL

Elijah M. Watkins (argued), W. Christopher Pooser, and Wendy J. Olson, Stoel Rives LLP, Boise, Idaho, for Plaintiffs-Appellants/Cross-Appellees.

Brian V. Church (argued), Deputy Attorney General, Civil Litigation Division; Mark A. Kubinski, Lead Counsel, Corrections Section; Idaho Department of Corrections, Boise, Idaho; for Defendants-Appellees/Cross-Appellants.

## OPINION

M. SMITH, Circuit Judge:

Plaintiffs, a class of incarcerated persons at the Idaho State Correctional Institution (ISCI), appeal the termination of prospective relief pursuant to the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(b). The relief was previously granted after the district court found unconstitutional levels of medical care and overcrowding at the facility. We affirm the district court's granting of the defendants' motion to terminate prospective relief.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1981, Walter Balla, an incarcerated person at ISCI, brought this class action suit alleging unconstitutional prison conditions against the State of Idaho, the Idaho State Board of Correction, and the Director of the Idaho Department of Correction (defendants). Over the decades since then, the district court has ordered many forms of prospective relief.

## A.

In 1984, the district court concluded that conditions at ISCI amounted to violations of plaintiffs' Eighth and Fourteenth Amendment rights. *See Balla v. Idaho State Bd. of Corrs.*, 595 F. Supp. 1558, 1574–83 (D. Idaho 1984), *rev'd on other grounds*, 869 F.2d 461 (9th Cir. 1989) (*Balla I*). The court granted injunctive relief in nine orders related mostly to medical care and physical safety. *Id.* at 1583. The next year, the district court approved compliance plans. Five of these *Balla I* orders have been terminated by stipulation.

## B.

After the entry of these *Balla I* orders, the population at ISCI increased, and the district court found unconstitutional overcrowding amounting to an unnecessary and wanton infliction of pain at the facility. *Balla v. Bd. of Corrs.*, 656 F. Supp. 1108, 1115 (D. Idaho 1987) (*Balla II*). The court issued ten more orders setting population caps, staffing requirements, and other restrictions, and mandated that the population caps could be increased only after structural changes or redesign. *Id.* at 1119–20.

## C.

By the early 2000s, the population at ISCI had again increased, but defendants moved to terminate the *Balla II* injunctive relief. By then, the PLRA had become law and established new standards for the granting and terminating of prospective relief related to prison conditions. *See* 18 U.S.C. § 3626. Discovery and briefing were limited by stipulation of the parties to the population caps and plumbing orders of *Balla II* in ISCI's Housing Units 9, 10, 11, and 13. In 2005, the district court found "conditions that [were] worse, both as to overall inmate population and plumbing

problems, than when the original injunctive orders were put in place." *Balla v. Idaho Bd. of Corr.*, No. CV81-1165-S-EJL, 2005 WL 2403817, at *9 (D. Idaho Sept. 26, 2005), *clarified on denial of reconsideration*, No. CV81-1165-S-EJL, 2005 WL 3412806 (D. Idaho Dec. 9, 2005) (*Balla III*). The court preserved the prospective relief from *Balla II* for Units 9, 10, and 11. *Id.* at *12 (stating "[t]he following sections of the permanent injunction in *Balla II* remain in effect"). The district court did not address Housing Units 1, 2, 3, 7, and 8 because it "presume[d] that the parties' agreement to limit briefing and argument to Units 9, 10, 11, and 13 mean[t] that the orders pertaining to Units 1, 2, 3, 7, and 8 are no longer at issue in this action." *Id.* at *9 n.1.

## D.

Five years later, the district court appointed a special master to investigate defendants' compliance with the remaining *Balla I* orders concerning medical and mental healthcare. The special master concluded that the prison was deliberately indifferent to the medical and mental healthcare needs of ISCI inmates. The district court ordered mediation, and the parties stipulated to procedures to modify the compliance plans, including adding a two-year compliance monitoring period and a compliance audit. At the end of the compliance period, ISCI would seek certification from the National Commission on Correctional Health Care (NCCHC) and, if certification was granted, the parties would voluntarily terminate the court orders. The court found the stipulated motion satisfied the requirements of the PLRA, 18 U.S.C. § 3626(a)(1), although the court subsequently concluded it should have conducted a more searching inquiry into conditions at ISCI.

In 2015, upon plaintiffs' motion for sanctions, the district court found that defendants falsified and manipulated

medical records and misled the special master. The court sanctioned defendants, restarting the two-year compliance monitoring period and modifying the stipulated motion to eliminate the automatic termination of some terms after NCCHC certification. The court required defendants to file a motion to terminate and prove that "there are no ongoing constitutional violations, that the relief ordered exceeds what is necessary to correct an ongoing constitutional violation, or both," quoting *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010).

## E.

At issue in this appeal is the district court's order granting defendants' motion to terminate all prospective relief, pursuant to the requirements of the PLRA, 18 U.S.C. § 3626(b). Plaintiffs claim that the district court cannot terminate the relief because there are current and ongoing constitutional violations at ISCI. The parties engaged in discovery on the motion. Before holding a hearing, the district court addressed various matters relevant to the motion, including prohibiting plaintiffs from introducing evidence of defendants failing to adequately treat inmates infected with the Hepatitis C virus as a current and ongoing constitutional violation. The court held that this issue was better addressed in a separate lawsuit pending before the same judge, *Turney et al. v. Atencio et al.*, No. 1:18-cv-00001-BLW (D. Idaho filed Jan. 3, 2018), because that suit included: (1) inmates from all Idaho prisons; (2) an attorney who was also a physician; and (3) the contracted medical provider as a defendant. The court noted that *Turney* is focused on Hepatitis C treatment, while the case before us is a "nearly forty-year-old action, which includes inmates of only one Idaho prison, does not include [the medical contractor] as a defendant, and is broadly focused on the

provision of medical treatment." Plaintiffs in the *Turney* case seek system-wide changes for all Idaho inmates. The court also observed that "there is virtually nothing to enforce with respect to [Hepatitis C] treatment as it relates to the current *Balla* injunctions."

The district court held an eleven-day hearing on the motion for termination of prospective relief. The court found that ISCI did receive NCCHC accreditation in 2017 and 2019, and that ISCI had complied with the agreed-upon standards in the modified compliance plan. ISCI currently has an infirmary (acute care), a long-term care unit (nursing home-like care), a chronic care clinic, and a Medical Annex. The Medical Annex is a tent-like structure which permanently houses people with medical needs higher than the general population, but not serious enough to warrant assignment to the infirmary or long-term care unit. Testimony conflicted on the medical care at the Medical Annex. The medical providers who work at ISCI testified that the care there met the needs of the patients, while the plaintiffs' expert and a former Regional Medical Director at ISCI described what he called a "horror show." Defendants also provided evidence that they had complied with the court-ordered population caps of Units 9, 10, 11, and 13, as well as the security staffing requirements for those units.

The district court ultimately found no current and ongoing constitutional violations in conditions of confinement at ISCI and terminated all *Balla* prospective relief. In a seventy-two-page written decision, the district court found that defendants had complied with its orders and were not deliberately indifferent to the medical needs of patients living in the Medical Annex because, although some witnesses testified that the care there did not meet the

prevailing community standard of care, it did meet the Eighth Amendment standard.

Plaintiffs challenge that termination in this appeal, and defendants challenge the legal standard for termination in their cross-appeal. Plaintiffs raise four issues: (1) whether the district court abused its discretion in excluding evidence of defendants' failure to adequately treat the Hepatitis C virus at ISCI; (2) whether the district court considered the proper standard of care in concluding that the medical care at ISCI's Medical Annex does not constitute a current and ongoing constitutional violation; (3) whether the district court erred in finding defendants satisfied their burden of proof that there are no current and ongoing constitutional violations related to security staffing and overcrowding at ISCI; and (4) whether this court has jurisdiction to review the termination of certain specific orders. Defendants' cross-appeal challenges the district court's assignment of the burden of proof that there are no current and ongoing constitutional violations to the moving party.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over most of this appeal and cross-appeal pursuant to 28 U.S.C. § 1291. As discussed below, we do not have jurisdiction to review the 2005 termination of certain orders.

We review questions of law de novo and findings of fact for clear error. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Evidentiary rulings we review for abuse of discretion. *See Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014).

**ANALYSIS**

**I.**

The PLRA sets the standards for granting and terminating prospective relief on prison conditions. *See* 18 U.S.C. § 3626. A district court can only grant prospective relief that "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot grant that relief "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right" (referred to as the needs-narrowness-intrusiveness standard). 18 U.S.C. § 3626(a)(1)(A). Prospective relief is terminable on the motion of any party or intervener "(i) 2 years after the date the court granted or approved the prospective relief; (ii) 1 year after the date the court has entered an order denying termination of prospective relief . . . ; or (iii) in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act, 2 years after such date of enactment." 18 U.S.C. § 3626(b)(1)(A).

Prospective relief can be immediately terminated "if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(b)(2). Pursuant to § 3626(b)(3), "[p]rospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the

Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation."

The movant also bears the burden of proof. "When a party moves to terminate prospective relief pursuant to § 3626(b), the burden is on the movant to demonstrate that there are no ongoing constitutional violations, that the relief ordered exceeds what is necessary to correct an ongoing constitutional violation, or both." *Graves*, 623 F.3d at 1048 (citations omitted).

## II.

We first address the issue of the introduction of evidence related to the treatment (or lack thereof) of Hepatitis C virus at ISCI. Plaintiffs contend that defendants fail to properly treat people with Hepatitis C, and that the district court abused its discretion in refusing to consider evidence of this failure when the court terminated the prospective relief. Plaintiffs argue that "the federal right at issue [in *Balla I*] was ISCI inmates' right to a medical delivery system that meets constitutional standards," and that a medical delivery system that fails to properly treat Hepatitis C does not meet constitutional standards. In their eyes, the district court did not properly terminate the relief because it could not consider the constitutionality of the entire medical care system at ISCI without considering Hepatitis C treatment.

However, the federal right at issue in *Balla I* is narrower than plaintiffs suggest. *Balla I* Order 3 requires "24-hour emergency medical care [to] be made available to the inmates at ISCI[,] . . . the prison administration [to] develop a system in writing which allows inmates unimpeded access to medical care[,] . . . [and] the administration [to] cause to be hired, or contracted for, the equivalent of at least one full-time physician to minister to the medical needs of the

inmates." *Balla I*, 595 F. Supp. at 1583. *Balla I* Order 4 mandates "the medical delivery system at ISCI to be properly staffed and organized to allow for the effective utilization of the infirmary." *Id.* The *Balla I* orders were not issued in consideration of Hepatitis C. Evidence of the virus's treatment does not necessarily answer whether there is an ongoing constitutional violation related to the general provision of healthcare that is required by the orders. As the district court said, "[w]ith no findings in [*Balla*] about [defendants'] current [Hepatitis C] treatment, there is virtually nothing to enforce with respect to [Hepatitis C] treatment as it relates to the current *Balla* injunctions."

## III.

### A.

We now turn to the issue of the level of care in ISCI's Medical Annex. We begin with an explanation of the legal standards. The government has an obligation to provide appropriate medical care for the people it holds in confinement. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Eighth Amendment's prohibition of cruel and unusual punishment includes a prohibition of prison officials "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Deliberate indifference is a "high legal standard" beyond malpractice or gross negligence. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "A determination of

'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). The court does not need to "defer to the judgment of prison doctors or administrators" when deciding if there has been deliberate indifference. *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citation omitted). The community standard of care outside of the prison context is "highly relevant in determining what care is medically acceptable and unacceptable." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (per curiam), *cert. denied sub nom. Idaho Dep't of Corr. v. Edmo*, 141 S. Ct. 610 (2020) (citation omitted).

## B.

The district court applied the appropriate legal standards, and we find no clear error in its findings of fact. The district court found that defendants were not deliberately indifferent to the serious medical needs of patients in the Medical Annex. It considered conflicting testimony from medical professionals on the adequacy of care in the Medical Annex, and concluded that the witnesses who saw problems with the level of care in the Medical Annex were applying a standard of care higher than that required by the Eighth Amendment deliberate indifference standard. The court found the testimony presented by both sides to be medically acceptable and decided that the difference in opinion between medical professionals on the adequacy of the medical care did not rise to the level of deliberate indifference. The court also concluded that "[t]he NCCHC accreditation," and defendants' completion of the modified compliance plan,

"while not determinative, constitute substantial evidence of adequate medical care."

The district court correctly looked to *Toguchi*'s "high legal standard" beyond malpractice or gross negligence and found no deliberate indifference. *See* 391 F.3d at 1060. Following *Edmo*, the district court gave due consideration to the community standard of care and the ways in which care at the Medical Annex might not meet it. Considering the record before it, the district court did not clearly err in finding no evidence that the ISCI medical staff made choices in conscious disregard of an excessive risk to the plaintiffs' health. *See Edmo*, 935 F.3d at 786. Accepting these findings, the conditions at the Medical Annex do not rise to the level of an Eighth Amendment violation because there is no deliberate indifference.

## IV.

Plaintiffs also challenge the termination of the population caps on Units 9, 10, 11, and 13 because they claim that defendants did not meet their burden of showing no current and ongoing constitutional violations. In light of § 3626(a), the *Balla III* court determined that the population caps "extend[] no further than is necessary to correct the Eighth Amendment violations, [are] narrowly drawn, and [are] the least intrusive way to correct the violations." The parties do not dispute that defendants complied with the population caps. The district court also found that defendants followed the required staffing patterns for medium custody units.

Plaintiffs argue that defendants cannot carry their burden without evidence that the underlying conditions that led to the prospective relief actually have been improved, not just that the defendants have complied with the injunction.

Plaintiffs observe that defendants presented no evidence of "measures taken to ensure inmate safety, the levels of inmate-on-inmate violence and assault, the design capacity of the housing units, inmates' opportunities for movement and access to educational programs and jobs, access to exercise, and the level of security staffing compared to the inmate population." Nonetheless, the district court found no current and ongoing violations related to overcrowding and security staffing. Plaintiffs argue that the district court "confused the remedy (the *Balla* orders) for the federal right (the right to constitutional conditions of confinement). The federal right coexists with and informs, but is not the same as, the remedy."

Defendants met their burden of showing no ongoing constitutional violation. Defendants have complied with the security staffing requirements and population caps in the court's orders. The district court ordered this relief because it concluded that the requirements would correct the violations of the federal rights at issue. Plaintiffs presented no evidence there were ongoing problems of the sort that motivated the population caps and security staffing orders in the first place. Plaintiffs' evidence was instead focused on out-of-cell and recreation facilities.

Defendants refer us to *Pierce v. Cty. of Orange*, 526 F.3d 1190 (9th Cir. 2008). In that case, we upheld the termination of relief pursuant to the PLRA when defendants showed compliance with the court orders. *Id.* at 1206–07. We held that compliance can show the absence of a current and ongoing violation when the plaintiff does not present contrary evidence. *See id.* Plaintiffs attempt to distinguish this case by arguing that plaintiffs in that case did present contrary evidence of ongoing overcrowding, but we see no evidence in the record of a continuation of the same or

related problems that would render the district court's findings clearly erroneous.  In the absence of such evidence and in the face of the systems in place at ISCI to prevent double-celling and exceeding the population caps, the district court did not err in finding no current and ongoing constitutional violation related to overcrowding at ISCI.

Plaintiffs also argue that this termination violates the terms of the *Balla II* order.  That order mandated that "[o]nly through adequate structural change or redesign of the housing units may the population caps ordered herein be increased."  *Balla II*, 656 F. Supp. at 1119.  *Balla III* preserved these population caps partially because there had been no structural or design changes "which was the Court's pre-condition to eliminating the injunctive orders."  *Balla III*, 2005 WL 2403817, at \*9.  Defendants claim that they do not need to show structural or design changes for termination because the *Balla II* decision held that only through structural or design changes could the population caps "be increased."  Because there have been no structural changes or redesign, defendants are prohibited from increasing the population caps, but not from terminating them.  The district court did not increase the population caps, so no structural or design changes were required.

## V.

Plaintiffs challenge the termination of *Balla II* Orders 1–5 (population caps and restrictions on double-celling in Units 1, 2, 3, 7, and 8), but we cannot review the termination of those orders because the orders were terminated in *Balla III* in 2005, and any appeal of that decision is untimely.

The *Balla III* court acknowledged that the parties at that time had agreed to limit briefing to Units 9, 10, 11, and 13, and so the court presumed that "the orders pertaining to

Units 1, 2, 3, 7, and 8 are no longer at issue in this action."
2005 WL 2403817, at *9 n.1.  The *Balla III* court wrote in
announcing that the motion to terminate relief was denied
that "[t]he following sections of the permanent injunction in
*Balla II* remain in effect" and listed population caps for Units
9, 10, 11, and 13 only.  *Id.* at *12.  Further, in order for the
Unit 7 and 8 injunctions to continue, the *Balla III* district
court would have had to make a needs-narrowness-
intrusiveness finding, which it did not do.  Plaintiffs did not
file a motion to reconsider or appeal from that order or the
*Balla III* judgment.  The district court here also concluded
that "the omission of the other *Balla II* Orders—those
pertaining to Units 1, 2, 3, 7, and 8 and close custody
inmates—from the list of orders that would 'remain in
effect' constituted a termination of those other *Balla II*
Orders."  Plaintiffs' appeal of the termination of those orders
here is untimely.  *See* Fed. R. App. P. 4(a)(1)(A).  The orders
terminated in 2005 and plaintiffs cannot challenge that
termination now.  We therefore dismiss the appeal as to
*Balla II* Orders 1–5.

## VI.

Defendants argue on cross-appeal that the burden
framework established in *Graves* and *Gilmore* "is wrong."
Those cases establish that "the burden is on the [§ 3626(b)]
movant to demonstrate that there are no ongoing
constitutional violations, that the relief ordered exceeds what
is necessary to correct an ongoing constitutional violation,
or both."  *Graves*, 623 F.3d at 1048 (citing *Gilmore v. People
of the State of California*, 220 F.3d 987, 1007–08 (9th Cir.
2000)).    The movant must prove the elements under
§ 3626(b)(1) or (b)(2) and that the (b)(3) limitation does not
apply.  *Id.*

We are bound by the law of our circuit, and only an en banc court or the U.S. Supreme Court can overrule a prior panel decision. *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). We continue to follow the law that "nothing in the termination provisions [of § 3626(b)] can be said to shift the burden of proof from the party seeking to terminate the prospective relief." *Gilmore*, 220 F.3d at 1007. Defendants' argument is foreclosed by *Graves* and *Gilmore*.

## CONCLUSION

The appeal as to *Balla II* Orders 1–5 is dismissed for lack of jurisdiction. The district court's granting of the motion for termination of prospective relief as to all other orders is affirmed. The judgment in appeal No. 20-35580 is affirmed.[1]

**AFFIRMED.**

---

[1] Each party shall bear its own costs on appeal.